UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL PHAN,

    Plaintiff,

v                                   Case No. 3:14-cv-83-J-32 PDB

CREDIT CONTROL SERVICES, INC.
d/b/a CREDIT COLLECTION SERVICES,

    Defendant.
_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, Michael Phan ("Plaintiff") alleges the following based on personal knowledge and information belief.

### NATURE OF THE ACTION

1. Plaintiff commences this action for damages and other legal and equitable remedies against Credit Control Services, Inc. d/b/a Credit Collection Services, for its repeat violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

### JURISDICTION AND VENUE

2. The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C § 227. *Mims v. Arrow Fin. Svcs., L.L.C.*, 132 S. Ct. 740 (2012).

3. Venue and personal jurisdiction is proper in this District pursuant to 28 U.S.C. § 1391 because the relevant acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4. Plaintiff is a natural person who resides in the City of Jacksonville, County of Duval, State of Florida. He is a "person" affected by a violation of the TCPA, as that term is defined by 47 U.S.C. § 153(10).

5. Defendant Credit Control Services, Inc. d/b/a Credit Collection Services ("CCS") is a Delaware corporation engaged in the business of collecting debts in Florida. Defendant CCS is a "debt collector" as that term is defined by 15 U.S.C. 1692a(3).

## FACTUAL ALLEGATIONS

*The Alleged Debts*

6. Sometime prior to December 28, 2008, Ms. Phan acquired an automobile insurance policy with Travelers Insurance Company ("Traveler").

7. Prior to the policy anniversary renew date of May 28, 2009, Traveler increased her premium by more than 25 percent even though she has no ticket, accident, or claim.

8. On or before May 28, 2009, Ms. Phan mailed a letter informing Travelers that she would not renewed her policy.

9. Following the Traveler's cancellation, Ms. Phan acquired a new policy with Progressive Insurance Company ("Progressive") on or before May 28, 2009.

10. Prior to the policy anniversary renew date of December 22, 2009, Progressive raised her premium by more than 32 percent even though she has no ticket, accident, or claim.

11. On or before December 22, 2009, Ms. Phan mailed a letter advising Progressive that she would not renewed her policy.

12. Upon personal knowledge and information belief, Plaintiff alleges that Ms. Phan has satisfactorily paid all premiums due prior to the policy cancellation.

13. Any amount due or owe were result from an unethical "bait and switch" tactics used by Traveler and Progressive.

14. Upon information and belief, Plaintiff alleges that Travelers and Progressive sold, transferred or otherwise placed the alleged debts with CCS for collection.

15. In or around September 24, 2009, Ms. Phan received a collection notice from CCS demanding a payment of $46.73 allegedly owe or due to Travelers Insurance Company ("the debt or "the alleged debt"). A copy of this notice is attached hereto as **Exhibit "A"** and is incorporated herein by reference.

16. In response, on September 25, 2009, Ms. Phan mailed a certified letter, disputing the debt, requesting verification, and advising CCS to cease further communication with her regarding the debt. A copy of this letter is attached hereto as **Exhibit "B"** and is incorporated herein by reference.

17. Upon personal knowledge and information belief, the September 25, 2009 letter was delivered and accepted by CCS's agent on or around September 28, 2009. A copy of return receipt requested is attached hereto as **Exhibit "C"** and is incorporated herein by reference.

18. On or around January 8, 2010, Ms. Phan received a collection notice from CCS demanding a payment of $142.67 allegedly owe or due to Progressive. A copy of this notice is attached hereto as **Exhibit "D"** and is incorporated herein by reference.

19. In response, on January 19, 2010, Ms. Phan mailed a certified letter, disputing the debt, requesting verification, and advising CCS to cease further communication with her regarding the debt. A copy of this letter is attached hereto as **Exhibit "E"** and is incorporated herein by reference.

20. Upon personal knowledge and information belief, the January 19, 2010 letter was

delivered and accepted by CCS's agent on or around January 25, 2010. A copy of return receipt requested is attached hereto as **Exhibit "F"** and is incorporated herein by reference.

21. Upon information and belief, Plaintiff alleges that CCS does not provide verification for the alleged debt.

22. The debt was a financial obligation that was primarily for personal, family, or household purpose and is, therefore, a "debt" as that term is defined by 15 U.S.C. § 1692a(5). However, neither Ms. Phan nor Plaintiff owed money to Travelers or Progressive.

*The Telephone Consumer Protection Act*

23. In 1991, Congress enacted the TCPA after finding that autodialer had become a problematic, posing a nuisance and invading the privacy of telephone subscribers. *See, e.g.*, TCPA 47 U.S.C. § 227 note; *see also* 105 Stat 2394 § 2(10). To stop the problem, Congress prohibited callers from, among other things, using "automatic dialing technology system" ("ATDS") to call cellular telephones in the absence of an emergency and without the prior express consent of the called party, and provided a private right of action with statutory damages for victims of this practice. *See, e.g.*, 47 U.S.C. § 227(b)(1)(A)(iii), and § 277(b)(3).

24. The prohibition on calls to cellular telephones applies to all ATDS calls, regardless of the identity of the caller or the content of the call. Despite this, illegal calls, both to landlines and to cellular telephones, continue to be a widespread problem, as evidenced by CCS behavior described in this complaint. *See, e.g., In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830, ¶ 22, 2012 WL 507959 (F.C.C. 2012) ("Since the TCPA's enactment and the adoption of implementing rules, the Commission has continued to receive thousands of complaints regarding unwanted auto-dialer calls," and "notwithstanding current consent requirements and other TCPA safeguards, consumers continue

4

to experience frustration in receiving unwanted auto-dialer calls.")

25. In recent years, businesses, like CCS, has invested in one or more automatic telephone systems that are capable of making volume of telephone calls without any human involvement. In doing so, CCS turned to a predictive dialer, which works autonomously until a human voice comes on the line. If that happens, an agent would joint the call. If that does not happens, CCS used a prerecorded message made with an artificial voice to deliver the message.

26. According to the FCC's 2008 Declaratory Ruling, predictive dialers use statistical algorithms to minimize the time that an agent spends waiting between conversations while minimizing the occurrence of someone answering when no agent is available. This provides saving and efficiency to CCS and their agents, but annoyance to the user of the cellular telephone to which such calls are placed. An automated call to a landline phone can be an annoyance; an automated to a cell phone adds expense to annoyance. *See, e.g., In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request for ACA International for Clarification and Declaratory Ruling,* CG Docket No. 02-278, 23 FCC Rcd 559, 565-566 (Dec. 28, 2007).

27. According to the FCC findings, unlike calls placed to landlines, calls made to wireless numbers can actually cost its recipients money, because cell phone users must frequently pay their respective wireless service providers either for each call they receive or incur a usage allocation deduction to their calling plan, regardless of whether or not the call is authorized. *Id.*

28. Likewise the FCC stated that predictive dialer met the definition of an ATDS given in the TCPA and therefore subject to the TCPA's restrictions. The key part of the FCC's reasoning in determining that a predictive dialer was, in fact, an ATDS were based on the

statutory definition of 'automatic telephone dialing system,' in the TCPA's legislative history, and current industry practices and technology, a predictive dialer falls within the meaning and definition of autodialer and the intent of Congress." *See also, 2003 TCPA Order*, 18 FCC Rcd. at 14091, ¶ 131.

29. Plaintiff is a bystander, he does not give consent to receive telephone calls from CCS, and CCS puts a machine on the job called a predictive dialer and repeatedly calling his cell phone number. All the calls that Plaintiff received from CCS were made in a futile effort to collect on a debt that he does not owed.

*CCS's Illegal Telephone Calls*

30. Without Plaintiff's prior express consent, from January 25, 2010 through February 12, 2010, CCS made 37 non-emergency telephone calls using a predictive dialer or ATDS. A copy of the call logs is attached hereto as **Exhibit "G"** and is incorporated herein by reference.

31. Some of the calls that Plaintiff did not answer, CCS used a prerecorded message made with an artificial voice and left a voicemail on his cell phone with instruction for him to return the call at 866-954-4973. The telephone numbers displayed on his caller ID were assigned or owed by CCS or otherwise spoof by CCS.

32. On January 26, 2010, at 10:17 a.m., Defendant CCS made a telephone call to Plaintiff cellular telephone using a predictive dialer or ATDS. The phone number displayed on his caller ID was 617-965-2000. Plaintiff answered and an artificial voice would state, ""This is an important message for Tuyen Phan. This is regarding to a private business matter. If you are not the intended party we are trying to reach, please call 1-866-945-4973 and we will cease further attempts to this number. If you are not the intended party please hand up at this time. This

message contains private information and should not be played in a manner where it could be heard by others. This call is from Credit Collection Services. This is attempt to collect a debt and any information obtained will be used for that purpose. For your privacy protection, visit www.warningnotice.com to access your personal account information. Your file number is xx-xxxx-01272. To hear this message again press #. Thank you."

33. On January 27, 2010, Defendant CCS made three telephone calls to Plaintiff cellular telephone using a predictive dialer or ATDS. The phone number displayed on his caller ID was 617-581-1071. The first call took place at 9:18 a.m. The second telephone occurred at 2:39 p.m., and the third telephone calls reoccurred at 5:47 p.m. Plaintiff did not answer, and CCS left the following prerecorded message made with an artificial voice on his voicemail:

> "This is an important message for Tuyen Phan. This is regarding to a private business matter. If you are not the intended party we are trying to reach, please call 1-866-945-4973 and we will cease further attempts to this number. If you are not the intended party please hand up at this time. This message contains private information and should not be played in a manner where it could be heard by others. This call is from Credit Collection Services. This is attempt to collect a debt and any information obtained will be used for that purpose. For your privacy protection, visit www.warningnotice.com to access your personal account information. Your file number is xx-xxxx-66455. To hear this message again press #. Thank you."

34. On January 28, 2010, Defendant CCS made two telephone calls to Plaintiff cellular telephone using a predictive dialer or ATDS. The phone number displayed on his caller ID was 617-965-2000. The first call took place at 9:43 a.m., and the second calls occurred at 6:57 p.m. Plaintiff answered both calls and each time, it played a prerecorded message made with an artificial voice which stated:

> "This is an important message for Tuyen Phan. This is regarding to a private business matter. If you are not the intended party we are trying to reach, please call 1-866-945-4973 and we will cease

7

further attempts to this number. If you are not the intended party please hand up at this time. This message contains private information and should not be played in a manner where it could be heard by others. This call is from Credit Collection Services. This is attempt to collect a debt and any information obtained will be used for that purpose. For your privacy protection, visit www.warningnotice.com to access your personal account information. Your file number is xx-xxxx-01272. To hear this message again press #. Thank you."

35. On January 29, 2011, Defendant CCS made three telephone calls to Plaintiff cellular telephone using a predictive dialer or ATDS. The telephone number displayed on his caller ID was 617-581-1071. The first call happened at 9:28 a.m., the second calls repeated at 3:24 pm, and the third calls reoccurred at 6:07 pm. Plaintiff answered the call place at 6:07 pm, and an artificial voice would stated, "This is an important message for Tuyen Phan. This is regarding to a private business matter. If you are not the intended party we are trying to reach, please call 1-866-945-4973 and we will cease further attempts to this number. If you are not the intended party please hand up at this time. This message contains private information and should not be played in a manner where it could be heard by others. This call is from Credit Collection Services. This is attempt to collect a debt and any information obtained will be used for that purpose. For your privacy protection, visit www.warningnotice.com to access your personal account information. Your file number is xx-xxxx-66455. To hear this message again press #. Thank you."

36. On several occasions, Plaintiff contacted CCS and asked the telephone calls to stop. On those occurrences, CCS's debt collectors stated that they would honor his request and removed his cell phone number from CCS's calling lists.

37. Despite CCS's debt collector promised. These telephone calls repeated daily, happened two or three times each day and continued from January 30, 2010 through February

12, 2010. Each telephone call usually occurred after 8 o'clock ante-meridiem and reoccurred before 9 o'clock post-meridiem.

38. Per FCC's 2008 Declaratory Ruling, the Commission stated that, the burden of proof is on the creditor or a third party debt collector to demonstrate that Plaintiff has provided prior express consent to be called. *Id.* Therefore, the burden is on CCS to show proof that Plaintiff has given consent to be contacted by CCS in the manner alleged herein.

39. On information and belief, Plaintiff alleges that CCS cannot meet this burden of proof because he did not give consent to receive robotic telephone calls from CCS in the manner described in the complaint.

40. If any consent existed, Plaintiff alleges that his wife has formally withdrew and revoked such consent in writing. *See, e.g.*, Ex. B and E.

41. Plaintiff further alleges that CCS cannot meet this burden of proof because he has no prior established business relationships with CCS that resulted in the debt owed.

42. Plaintiff provided neither Travelers nor Progressive his wireless number at any the time during the transaction or thereafter.

43. Plaintiff did not list a wireless number in or on any document with Travelers or Progressive at any time during the transaction or thereafter.

44. Plaintiff did not verbally provide CCS his wireless number at any time during the transaction or thereafter.

45. Direct evidence of CCS using an ATDS or predictive dialer is within the sole possession of CCS at this stage, and will therefore only come to light once discovery has been undertaken. However, a reasonable inference can be drawn that the calls described herein were delivered by an ATDS or predictive dialer based on the genetic content of the calls and the

existence of similar calls received by Plaintiff.

46. The Association of Credit and Collection Professionals ("ACA International") have stated that, "[I]t is clear [the FDCPA and TCPA] apply to consumers and non-consumers. Therefore, collectors should take steps to scan their collection lists and ensure debt collectors are contacting the correct consumer." *Id.*

47. ACA International has also concluded that, "[E]rroneously dialed numbers likely are not exempted from the [TCPA and FCC regulations] pertaining to autodialer and prerecorded messages. Thus, a debt collector may face liability under the TCPA and corresponding FCC regulations for autodialed and prerecorded message calls placed to the wrong individual." *Id.*

48. On information and belief, Plaintiff alleges that CCS have not adopted and implemented reasonable practices and procedures to effectively prevent autodialer placed calls to a non-consumer cell phone number. In contrary, CCS has adopted a corporate policy in using one or more automatic telephone dialing systems that were capable of delivering a prerecorded message made with an artificial to the wrong individuals just as they did to the Plaintiff's cellular telephone in this case.

49. CCS acts or practices described above were knowing and done with an entire want of care that reflects a conscious indifference to the consequences.

50. As a direct consequence of CCS willingly or knowingly violated the TCPA, Plaintiff has suffered harm, continues to suffer from anger, anxiety and frustration.

## CAUSES OF ACTION

### COUNT I
### Negligent Violations of the TCPA, 47 U.S.C. § 227

51. Plaintiff incorporates the allegations contained in ¶ 1 through ¶ 50 and further states as follows:

52. Notwithstanding the fact that Plaintiff did not give express consent to be contacted, from January 25, 2010 through February 12, 2010, CCS neglectfully made 37 non-emergency telephone calls to his cellular telephone using one or more automatic telephone dialing systems. This machine left a dozen useless prerecorded messages made with an artificial voice on Plaintiff's voicemail for which he incurred a charge for the incoming calls, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

53. The foregoing acts and omissions of CCS constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every of the above-cited provisions of 47 U.S.C. § 277, *et seq.*

54. As a result of CCS's negligent violations of 47 U.S.C. § 277 *et seq.*, Plaintiff is entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

## COUNT II
### Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227

55. Plaintiff incorporates the allegations contained in ¶ 1 through ¶ 54 and further states as follows:

56. On numerous instances, Plaintiff verbally informed CCS and their debt collectors to stop calling his cellular telephone because he did not agree to be contacted. Even in the absent Plaintiff's prior express consent, CCS knowingly made 37 non-emergency telephone calls to Plaintiff cellular telephone using one or more automatic telephone dialing systems and left a dozen of prerecorded messages made with an artificial voice on his voicemail for which he incurred a charge for the incoming calls, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

57. The foregoing acts and omissions of CCS constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one

of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

58.   As a result of CCS's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to treble damages up to $1,500.00 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against CCS as follows:

a.   Award Plaintiff statutory damages in the amount of $500 for each and every violation pursuant to 47 U.S.C. 227(b)(3)(B).

b.   If it is found that CCS willfully and/or knowingly initiated a telephone call using an automated dialing system or prerecorded artificial voice to Plaintiff's cellular telephone in violation of the TCPA, an increase by the Court an award of statutory damages pursuant to 47 U.S.C. § 227(b), prayed for to three times that amount for each and every violation as described in the previous paragraph, as authorized by 47 U.S.C. § 227(b)(3), for willful and/or knowing violations; and

c.   Granting other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests trial by jury on all claims that can be so tried.

Respectfully submitted on this 21 day of January 2014.

By: [signature]
Dr. Michael Phan. D.Ed.
6030 Bartram Village Drive
Jacksonville, FL 32258
Telephone: (904) 551-0699
michaelnphan@gmail.com

12

# CREDIT COLLECTION SERVICES

Two Wells Avenue, Dept. 9134, Newton, MA 02459
Monday – Friday: 8AM – Midnight, ET
Saturday: 8AM – 4PM, Sunday: 2PM – 10PM, ET
Self Service: www.warningnotice.com
Toll Free: 1 (800) 326-6400 (Se Habla Español)



Date: 9/21/09
File Number: 05 0353 01272
0001809898-0



TUYEN & MICHAEL PHAN
9401 OSPREY BRANCH TRL
TRL UNIT 9
JACKSONVILLE, FL 32257-8158



PLAINTIFF'S EXHIBIT A

| REGARDING: | AMOUNT DUE: |
|---|---|
| TRAVELERS INSURANCE COMPANY | $46.73 |

036839 - 0049 - LOT02

Since 8/12/2009, this office has a documented file of every notice, telephone attempt, and verbal contact made in pursuit of your delinquent payment obligation. Failure to respond to this notice will lead to additional recovery efforts in compliance with applicable State and Federal Law(s).

Please remit full payment in the envelope provided or visit our secure website @ www.warningnotice.com. Self service menu options include:

- Paying online by check or credit card
- Establishing payment arrangements with this office
- Printing scheduled payment vouchers
- Activating private email as your preferred method to be contacted
- Accessing help desk information; etc.

In accordance with Federal Law, the following warning notice is required. This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication was sent by a debt collector.

**PRIVATE NOTICE ▶ EMAIL MESSAGING:** If activated, this office will consider your private email address your preferred method to be contacted. This will help minimize the need to send physical mail and/or place telephone calls to your residence. You can activate this option @ www.privatenotice.com.

**MAILING INSTRUCTIONS:** Enclose bottom portion with your payment or send correspondence to: CCS, P.O. Box 9134, Needham Heights, MA 02494-9134 (include file number below). This office may process your payment as a one time electronic funds withdrawal using the account information from your check.

## PAY ONLINE BY CHECK OR CREDIT CARD

File Number: 05 0353 01272
Zip Code - 32257
TUYEN & MICHAEL PHAN

**CHECK-BY-PHONE AND CREDIT CARD ACCOMMODATION**

You can instantly pay by check or credit card by calling the above referenced toll free number for assistance. Our Customer Service Representatives are professionally trained and available during extended business hours.

VISA • MASTERCARD • AMERICAN EXPRESS

Please write your file number (above) on your check. To expedite credit, **do not** send payment(s) directly to our client.

C.C.S.
PAYMENT PROCESSING CENTER - 27
P.O. BOX 55126
BOSTON, MA 02205-5126

| AMOUNT DUE: |
|---|
| $46.73 |

5970000490353012720000046739

September 24, 2009

**PLAINTIFF'S EXHIBIT B**

**VIA CERTIFIED MAIL**
Article No. 7008 2810 0001 7903 8242
Credit Collection Services
Two Wells Avenue Dept. 9134
Newton, MA 02459

RE: Travelers Insurance Co., Policy Number Ending in 0329
    CCS File #: 05 0353 01272

Dear Credit Control Services:

This letter is to inform Credit Control Services ("CCS") that I received a collection notice dated September 21, 2009. Please take notice that I dispute the alleged debt and demand validation. Pursuant to my right under the Fair Debt Collection Practice Act (FDCPA), I wish CCS, its representatives and agents to cease further contacts with me regarding the debt because I will not offer to pay CCS any money. Furthermore, CCS and its representatives and agents may not contact my family, friends, and neighbors in relation to this and all other alleged debts either CCS or Travelers claim I owe, pursuant to 15 U.S.C. § 1692c of the FDCPA.

Likewise, please stop calling me with regard to the debt to the following cellular telephones, phone numbers: ███████ 3347 or ███████ 2009, pursuant to the Telephone Consumer Protection Act (TCPA). To the extend any prior express consent to the use of any "automatic telephone dialing system" ("ATDS") or artificial or prerecorded voice existed when calling this cellular telephone numbers, it is hereby unequivocally and forever withdraw and terminated both by my will and the law listed above. Please be advised that non-emergency telephone call to my cellular telephone using any ATDS or prerecorded message made with an artificial voice without my express consent is prohibited pursuant to 47 U.S.C. § 227(b)(1)(A)(iii).

I am sending CCS a copy of this letter by regular first class mail in case CCS refuse to accept the certified mail, return receipt requested version of this letter.

If CCS fails to comply with this notice, I will consider all of my option and remedies provided under the law.

Please govern yourselves accordingly,

*[signature]*

Tuyen N. Phan
9401 Osprey Branch Trail Unit 9
Jacksonville, FL 32256

Cc: Traveler Insurance Company at P.O. Box 6075, Glens Falls, NY 12801

PLAINTIFF'S EXHIBIT C

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Credit Collection Services
   Two Wells Avenue
   Dept. 9134
   Newton, MA 02459

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   X [signature]   ☐ Agent  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☒ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Transfer from service label)
   7008 2810 0001 7903 8242

PS Form 3811, February 2004    Domestic Return Receipt

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $0.44 | 0217 |
| Certified Fee | $2.80 | 16 |
| Return Receipt Fee (Endorsement Required) | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $5.54 | 09/25/2009 |

Sent To: Credit Collection Services
Street, Apt. No.; or PO Box No. Two Wells Ave Dept. 9134
City, State, ZIP+4 Newton, MA 02459

PS Form 3800, August 2006    See Reverse for Instructions

Case 3:11-cv-00083-HLA-HTS Document 1 Filed 01/22/11 Page 16 of 20 PageID 16




# CREDIT COLLECTION SERVICES
Two Wells Avenue, Dept. 9134, Newton, MA 02459
Monday – Friday: 8AM – Midnight, ET
Saturday: 8AM – 4PM, Sunday: 2PM – 10PM, ET
Self Service: www.warningnotice.com
Toll Free: 1 (800) 326-6400 (Se Habla Español)

Date: 1/2/10
File Number: 05 0366 66455
80311092-0000-40-09-



TUYEN N PHAN
9401 OSPREY BRANCH TRL
TR #9
JACKSONVILLE, FL 32257-8158



PLAINTIFF'S EXHIBIT D

13/2009

**REGARDING:** PROGRESSIVE SELECT INSURANCE CO

**AMOUNT DUE:** $142.67

004208 - 0021 - LOT01

## WARNINGNOTICE.COM - WARNINGNOTICE.COM

This notice and all further steps undertaken by this agency will be in compliance with applicable State and Federal Law(s). In accordance with Federal Law, the following warning notice is required. This is an attempt to collect a debt and any information obtained will be used for that purpose. This Communication was sent from a debt collector.

The above referenced amount is due for coverage provided under your insurance contract.

Please remit payment in the envelope provided or visit our secure website @ www.warningnotice.com. Self service menu options include:

- Paying online by check or credit card
- Establishing payment arrangements with this office
- Printing scheduled payment vouchers
- Activating private email as your preferred method to be contacted
- Accessing help desk information, etc.

Thank you for your anticipated cooperation

## FEDERAL LAW

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor. This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication has been sent by a debt collector.

## FLORIDA

This collection agency is licensed by the State of Florida

**CREDIT REPORTING:** You are herby notified that a negative credit report reflecting on your credit record may be submitted to a consumer reporting agency if you fail to fulfill the terms of your credit obligations. Adverse credit information is scheduled to be reported on or after 02/15/10.

**MAILING INSTRUCTIONS:** Enclose bottom portion with your payment or send correspondence to: CCS, P.O. Box 9134, Needham Heights, MA 02494-9134 (include file number below). This office may process your payment as a one-time electronic funds withdrawal using the account information from your check.

Case 3:14-cv-00083-TJC-PDB   Document 1   Filed 01/22/14   Page 17 of 20 PageID 17

January 18, 2010



PLAINTIFF'S EXHIBIT
E

**VIA CERTIFIED MAIL**
Article No. 7009 2250 0003 1004 8997
Credit Collection Services
Two Wells Avenue Dept. 9134
Newton, MA 02459

RE:   Progressive Insurance Policy Number Ending in 1092
      CCS File #: 05 0353 01272

Dear Credit Control Services:

This letter is to inform Credit Control Services ("CCS") that I received a collection notice dated January 1, 2010. Please take notice that I dispute the alleged debt and demand validation. Pursuant to my right under the Fair Debt Collection Practice Act (FDCPA), I wish CCS, its representatives and agents to cease further contacts with me regarding the debt because I will not offer to pay CCS any money. Furthermore, CCS and its representatives and agents may not contact my family, friends, and neighbors in relation to this and all other alleged debts either CCS or Progressive claim I owe, pursuant to 15 U.S.C. § 1692c of the FDCPA.

Likewise, please stop calling me with regard to the debt to the following cellular telephones, phone numbers: ▮▮▮▮▮3347 or ▮▮▮▮▮2009, pursuant to the Telephone Consumer Protection Act (TCPA). To the extend any prior express consent to the use of any "automatic telephone dialing system" ("ATDS") or artificial or prerecorded voice existed when calling this cellular telephone numbers, it is hereby unequivocally and forever withdraw and terminated both by my will and the law listed above. Please be advised that non-emergency telephone call to my cellular telephone using any ATDS or prerecorded message made with an artificial voice without my express consent is prohibited pursuant to 47 U.S.C. § 227(b)(1)(A)(iii).

I am sending CCS a copy of this letter by regular first class mail in case CCS refuse to accept the certified mail, return receipt requested version of this letter.

If CCS fails to comply with this notice, I will consider all of my option and remedies provided under the law.

Please govern yourselves accordingly,

*[signature]*

Tuyen N. Phan
9401 Osprey Branch Trail Unit 9
Jacksonville, FL 32256

Cc:   Progressive Insurance Company at P.O. Box 31260, Tampa, FL 33631-3260



**PLAINTIFF'S EXHIBIT F**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Credit Collection Services
2 Wells Ave. Dept. 9134
Newton, MA 02459

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X [signature]
☐ Agent
☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

JAN 2010

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☒ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7009 2250 0003 1004 8997

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

NEWTON CENTER MA 02459

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $0.44 | 0217 |
| Certified Fee | $2.80 | 19 |
| Return Receipt Fee (Endorsement Required) | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $5.54 | 01/19/2010 |

Sent To: Credit Collection Services
Street, Apt. No.; or PO Box No.: 2 Wells Ave. Dept. 9134
City, State, ZIP+4: Newton, MA 02459

PS Form 3800, August 2006   See Reverse for Instructions

# COLLECTION COMMUNICATIONS LOG
Credit Control Services, Inc., d/b/a Credit Collection Services



PLAINTIFF'S EXHIBIT G

1

| | Date of Call (MM/DD/YY) | Time of Call (AM/PM) | Telephone Number Calling From | Caller's Name and Company | Call Made to Cellular Telephone | ATDS | Voicemail Message |
|---|---|---|---|---|---|---|---|
| 1 | 01/26/10 | 10:17 am | 617-965-2000 | Credit Collection Services | Y | Y | Y |
| 2 | 01/27/10 | 9:18 am | 617-581-1071 | | Y | Y | Y |
| 3 | 01/27/10 | 2:39 pm | | | Y | Y | Y |
| 4 | 01/27/10 | 5:47 pm | | | Y | Y | Y |
| 5 | 01/28/10 | 9:43 am | 617-965-2000 | | Y | Y | |
| 6 | 01/28/10 | 6:57 pm | | | Y | Y | |
| 7 | 01/29/10 | 9:28 am | 617-581-1071 | | Y | Y | |
| 8 | 01/29/10 | 3:24 pm | | | Y | Y | |
| 9 | 01/29/10 | 6:07 pm | | | Y | Y | |
| 10 | 01/30/10 | 9:23 am | 617-965-2000 | | Y | Y | Y |
| 11 | 01/30/10 | 3:27 pm | | | Y | Y | |
| 12 | 02/01/10 | 9:28 am | 617-581-1071 | | Y | Y | |
| 13 | 02/01/10 | 12:35 pm | | | Y | Y | |
| 14 | 02/01/10 | 5:49 pm | | | Y | Y | |
| 15 | 02/02/10 | 10:19 am | 617-965-2000 | | Y | Y | Y |
| 16 | 02/02/10 | 6:17 pm | | | Y | Y | |
| 17 | 02/03/10 | 9:49 am | 617-581-1071 | | Y | Y | |
| 18 | 02/03/10 | 12:31 pm | | | Y | Y | |
| 19 | 02/03/10 | 5:35 pm | | | Y | Y | |
| 20 | 02/04/10 | 10:23 am | 617-965-2000 | | Y | Y | Y |
| 21 | 02/04/10 | 6:43 pm | | | Y | Y | |
| 22 | 02/05/10 | 9:23 am | 617-581-1071 | | Y | Y | |
| 23 | 02/05/10 | 12:57 pm | | | Y | Y | |
| 24 | 02/05/10 | 5:32 pm | | | Y | Y | |
| 25 | 02/06/10 | 10:19 am | 617-965-2000 | | Y | Y | Y |
| 26 | 02/06/10 | 6:09 pm | | | Y | Y | |
| 27 | 02/08/10 | 9:38 am | 617-851-1071 | | Y | Y | |
| 28 | 02/08/10 | 12:07 pm | | | Y | Y | |
| 29 | 02/08/10 | 5:13 pm | | | Y | Y | |
| 30 | 02/09/10 | 10:14 am | 617-965-2000 | | Y | Y | Y |
| 31 | 02/09/10 | 6:19 pm | | | Y | Y | |
| 32 | 02/10/10 | 9:19 am | 617-851-2000 | · | Y | Y | |
| 33 | 02/10/10 | 12:46 pm | | | Y | Y | |
| 34 | 02/10/10 | 5:21 pm | | | Y | Y | |

2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 35 | 02/11/10 | 10:38 am | 617-965-2000 | | Y | Y | Y |
| 36 | 02/11/10 | 6:39 pm | | | Y | Y | |
| 37 | 02/12/10 | 9:37 am | 617-851-2000 | | Y | Y | |